**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| | )    **Case No.: SACV 15-01541-CJC(JCGx)** |
| **BEHROUZ A. RANEKOUHI, FERESHTE RANEKOUHI, and GOLI RANEKOUHI, individually and on behalf of all others similarly situated,** | ) <br> ) <br> ) <br> ) <br> ) <br> )    **ORDER GRANTING FINAL** |
| **Plaintiffs,** | )    **APPROVAL OF THE CLASS** <br> )    **SETTLEMENT AND GRANTING IN** <br> )    **SUBSTANTIAL PART PLAINTIFFS'** <br> )    **MOTION FOR ATTORNEYS' FEES** |
| **v.** | ) |
| **S.B.S. TRUST DEED NETWORK, d.b.a. S.B.S LIEN SERVICES,** | ) <br> ) <br> ) |
| **Defendant.** | ) <br> ) <br> ) |

## I. INTRODUCTION

      Plaintiffs Behrouz A. Ranekouhi, Fereshte Ranekouhi, and Goli A. Ranekouhi bring this action against Defendant S.B.S. Trust Deed Network, d.b.a. S.B.S. Lien

Services, for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the California Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civil Code § 1788 *et seq*.  The parties reached a settlement, and the Court granted preliminary approval of the settlement agreement (the "Agreement") and provisionally certified a class on March 24, 2016.  (Dkt. 19.)  Plaintiffs now move for final approval of that agreement, and for an award of attorneys' fees, costs, and incentive awards.  (Dkt. 20; Dkt. 23.)  Defendant has joined in the motion for final approval and noted its non-opposition to the fee motion.  (Dkt. 21; Dkt. 22.)  For the following reasons, Plaintiffs' motion for final approval is GRANTED, and their motion for attorneys' fees, costs, and incentive awards is GRANTED IN SUBSTANTIAL PART.

## II.  BACKGROUND

### A.  Factual Background

The complaint, (Dkt. 1 ("Compl.")), alleges the following facts: Plaintiffs incurred financial obligations to their homeowners association, the "Westlake Villas Community Association."  (Compl. ¶ 19.)  Plaintiffs fell behind on their payments on the obligations, and the debts were assigned to Defendant.  (*Id.* ¶¶ 20–21.)  On October 13, 2014, Defendant sent Plaintiffs a letter labeled as a "decision to foreclose."  (*Id.* ¶ 22.)  The letter informed Plaintiffs that their failure to pay the debt had resulted in a lien against their property, and that the homeowners association had decided to foreclose on that property.  (*Id.* ¶ 24.)  The letter also threatened that if Plaintiffs did not pay up, they could incur approximately $1,500 in foreclosure fees and costs (in addition to having their home foreclosed upon).  (*Id.* ¶ 25.)

The letter went on to inform Plaintiffs that the total amount due was $6,347.80, and that that amount would increase daily.  (*Id.* ¶ 28.)  If Plaintiffs wished to dispute the

validity of the debt, the letter said, they could contact Defendant's office within 30 days. (*Id.* ¶ 29.)

Plaintiffs assert that Defendant's letter was a "communication" as defined by the FDCPA, and a "debt collection" as defined by the Rosenthal Act. *See* 15 U.S.C. ¶ 1692a(2); Cal. Civ. Code § 1788.2(b). They also assert that the letter violated the FDCPA in a number of different ways:

1. The letter did not contain a "statement that if the consumer notifies the debt collector in writing within [30 days of receiving the notice of debt] that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt" and send verification to the consumer, as required by 15 U.S.C. § 1692g(a)(4). (Compl. ¶ 31.)

2. The letter did not contain a "statement that, upon the consumer's written request within [30 days of receiving the notice of debt], the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor," as required by 15 U.S.C. § 1692(a)(5). (Compl. ¶ 27.)

3. The letter violated 15 U.S.C. § 1692a(3) by including language that would make the least sophisticated consumer uncertain as to the dispute rights and obligations afforded by the FDCPA. (Compl. ¶ 30.)

Plaintiffs also allege that the letter violated the Rosenthal Act in two ways. First, it did not contain a "notice to debtors" with a sufficient description of "debtor rights," as set forth in Cal. Civil Code § 1812.700, and any violation of § 1812.700 is considered to be a violation of the Rosenthal Act, *see* § 1812.702. (Compl. ¶ 34.) And second, because the Rosenthal Act incorporates most of the FDCPA, including the provisions of the FDCPA

relevant here, see Cal. Civil Code § 1788.17, Defendant's alleged violations of the FDCPA also constitute violations of the Rosenthal Act. (Compl. ¶ 56.)

Plaintiffs' complaint sought statutory damages and to certify a class, based on Plaintiffs' belief that Defendants sent virtually identical letters to a number of other individuals. (*See* Compl. at 11.)

**B. Procedural Background**

Plaintiffs filed the Complaint in September 2015. (*See* Compl.) After a number of stipulations to extend Defendant's time to answer, the parties settled and filed a joint motion for preliminary approval. (Dkt. 16.) The Court granted the motion, provisionally certified the class for settlement purposes only, appointed the law firms of Kazerouni Law Group, APC and Hyde & Swigart as Class Counsel, appointed Plaintiffs as class representatives, and approved the parties' proposed procedure for disseminating notice of the settlement to class members. (*See generally* Dkt. 19 ["Prelim. Approval Order"].)

The parties represent that notice was distributed to the class as planned. The Class Administrator, ILYM Group, received a list of the 193 Class Members and their recorded addresses on March 30, 2016, and mailed notice to all Class Members on April 6. (Dkt. 23-9 ["Mullins Decl."] ¶¶ 3–4.) Thirty-four notices were returned as undeliverable, five of which bore a forwarding address. (*Id.* ¶ 5.) ILYM re-mailed the notice to those five and performed skip traces on the remaining 29. (*Id.*) Skip traces revealed 18 updated addresses for Class Members, and notice was re-mailed to those additional 18 addresses. (*Id.*) As a result, only 11 notices were ultimately deemed undeliverable. (*Id.* ¶ 6.) The notice to class members informed them of exclusion and objection procedures, but ILYM received no requests for exclusion, (*id.* ¶ 7), and the Court has received no objections.

The Agreement itself provides that each Class Member who did not opt out will receive a $75.00 award from Defendant.  (Dkt. 23-3 ["Agreement"] ¶ 2.5.)  Each of the named Plaintiffs will receive an award of $2,075.00, consisting of a $2,000 incentive award and a $75.00 Class member award.  (*Id.*)  Defendant will pay Plaintiffs' attorneys' fees and agreed to not contest a request for a fee award of up to $40,000.  (*Id.*)  Additionally, Defendant will pay the costs of the Class Administrator.  (*Id.* ¶ 5.1)  The Agreement's release provision provides that Class Members will release Defendant from "all claims . . . arising out, or in any way related to any of the facts" of this action.  (*Id.* ¶ 8.1)  The Agreement also permanently enjoins the releasing parties from commencing any action based on any of the released claims.  (*Id.* ¶ 8.3.)  The effective date of the agreement is one day after the final day on which any party could have appealed final approval of the Agreement.  (*Id.* ¶ 10.1.)

## III.  DISCUSSION

When the parties reach a settlement agreement prior to class certification, the Court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The Court will first assess the propriety of class certification, followed by the fairness of the settlement agreement.  Then, it will address the issues of attorneys' fees and expenses, administration costs, and Plaintiffs' incentive awards.

### A.  Class Certification

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) the four requirements under Rule 23(a) concerning numerosity, commonality, typicality, and adequacy; and (2) the requirement that the action fall within one of the three "types" of classes described under the

subsections of Rule 23(b).  In this case, Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows certification if "the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court previously concluded that Plaintiff had presented sufficient evidence to show that the proposed class satisfied the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a), as well as the predominance and superiority requirements under Rule 23(b)(3).  (*See* Dkt. 19.)  Having reviewed those elements again, the Court adopts its prior analysis with respect to class certification and grants certification of the proposed class for purposes of settlement only.

**B.  Fairness of the Settlement**

The Ninth Circuit has a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)).  Federal Rule of Civil Procedure 23 "'requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.'"  *Staton*, 327 F.3d at 959 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (emphasis omitted)).  To determine whether this standard is met, a district court must consider a number of factors, including "'the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.'"  *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

Having fully considered the *Staton* factors, the Court finds this settlement fundamentally fair and reasonable to the parties involved.

### 1. Strength of the Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The facts at issue in this case are straightforward, so it is unsurprising that the parties settled quickly. (Defendant never even answered the Complaint). Nonetheless, Defendant denies Plaintiff's allegations, and both parties faced risk and considerable expense in continuing to litigate these claims. Indeed, the truth of the matter is that not all that much is at stake here. Improper dunning notices were allegedly sent to fewer than 200 people. No one alleges actual damages, and statutory damages are limited. Even a few rounds of motion practice, or a few months of discovery, would have cost the parties more than the entire amount in dispute. Accordingly, a quick settlement on straightforward claims was an appropriate way to conserve resources and shift recovery from attorneys to the class. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."). This factor therefore supports final approval of the settlement.

### 2. Amount Offered in Settlement

The substantive terms of the Agreement also weigh in favor of approval. The Agreement calls for a total award of $14,475.00, with $75.00 being distributed to each Class Member. (Agreement ¶ 2.5.) Any remainder will be distributed to a cy pres recipient. (*Id.*) The FDCPA provides that in the case of a class action, recovery is limited to $1,000 per named plaintiff plus the lesser of $500,000 or one percent of the net

worth of the debt collector.  15 U.S.C. § 1692k.  The parties represent that the $14,475.00 figure is "far in excess" of one percent of Defendant's net worth.  (Agreement ¶ 1.3.) Although Plaintiffs also assert state law claims which come with a potential statutory damage award, the fact that the proposed settlement exceeds the statutory maximum for the FDCPA claims suggests that the settlement's substantive terms are fair.  *See Schuchardt v. Law Office of Rory W. Clark*, Case No. 15-cv-01329-JSC, 2016 WL 1701349, at *8 (N.D. Cal. Apr. 28, 2016) (granting final approval in part because the settlement "represent[ed] more monetary relief for each Class Member than the FDCPA itself would allow, and therefore represents a recovery in excess of what Plaintiffs would have received had they proceeded with trial").  And because the class award is capped by the FDCPA, further litigation would likely be unavailing to the Class Members, who appear not to have suffered actual damages.  The award also appears to be well within the range of comparable actions.  *See Schuchardt*, 2016 WL 1701349, at *9  (granting final approval in FDCPA/Rosenthal Act settlement where each of 930 class members was to receive roughly $15.00); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 5458986, at *5 (S.D. Cal. Dec. 10, 2008) ($70 per class member); *Durham v. Continental Cent. Credit, Inc.*, No. 07cv1763 BTM(WMc), 2011 WL 2173769, at *2 (S.D. Cal. June 2, 2011) (approximately $180 per class member).

### 3.  Extent of Discovery Completed, Stage of Proceedings, and Experience and View of Counsel

"In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'"  *Schuchardt*, 2016 WL 1701349, at *10 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).  Here, the parties engaged in "informal and confirmatory discovery" to investigate the merits of Plaintiffs' claims and Defendants' defenses.  (Dkt. 23-2 at 1.)  This discovery included

calculating the amount of Defendant's net worth—a crucial factor for liability in the FDCPA context.  Given the straightforward nature of Plaintiffs' claims and Defendant's willingness to engage in settlement talks, additional discovery would have likely only incurred unnecessary costs.

Class Counsel, who are very experienced in consumer litigation, also confirm their belief that the Agreement is fair.  (*See* Dkt. 19 at 7 (discussing Class Counsel's experience with litigating debt collection class actions); *see also* Dkt. 23-2 at 2; Dkt. 23-4 at 2; Dkt. 23-5 at 2 (relating counsel's belief that the settlement is adequate).)  Accordingly, the extent of discovery, stage of the proceedings, and the views of class counsel support final approval.

### 4.  Reaction of Class Members

No class member has requested exclusion from the class or objected to the Agreement.  A small number of objections and opt-outs supports final approval.  *Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *see also Catala v. Resurgent Capital Servs. L.P.*, Civil No. 08cv2401 NLS, 2010 WL 2524158, at *5 (S.D. Cal. June 22, 2010) ("The lack of opt-outs and objections favor[s] approving the settlement.").  This factor therefore weighs in favor of approval.

Having considered the bearing of the *Staton* factors on this case, the Court finds that final approval of the class settlement is warranted.  The terms of the Agreement

appear to be fair, the notice procedure was appropriate, and no Class Members have objected.

## C. Attorneys' Fees

A district court has the authority and the duty to determine the fairness of attorneys' fees in a class action settlement. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999). The amount of fees awarded rests in the court's sound discretion. *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986). Even when parties have agreed to an amount, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Prods. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Under the FDCPA, a successful plaintiff is entitled to receive reasonable attorneys' fees and costs as part of a damages award. 15 U.S.C. § 1692k(a)(3); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ("The FDCPA's statutory language makes an award of fees mandatory."). The amount of the fee should be calculated by applying the "lodestar method," which requires courts to "multiply[] the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho*, 523 F.3d at 978.

Here, three attorneys for Plaintiffs request a fee award. Abbas Kazerounian, a partner, expended 25.8 hours, which he requests to be compensated for at a rate of $595.00 per hour. (Dkt. 20-2 Exh. A.) Joshua Swigart, also a partner, expended 30.4 hours, also at a rate of $595.00 per hour. (*Id.*) And Mona Amini, an associate, expended 25.6 hours, for which she requests compensation at a rate of $300.00 per hour. (*Id.*) Based on the information on prevailing rates submitted by Plaintiffs, (*id.* Exh. B), these rates appear to be reasonable, and the Court will approve them.

The Court has reviewed the billing records of Plaintiffs' attorneys and notes that the recorded expenditures largely appear to be appropriate.  The Court will make one adjustment, however.  Because Plaintiffs' counsel filed their fee motion approximately one month before their motion for final approval, they were only able to *estimate* the amount of time they would expend on their motion for final approval.  Mr. Kazerounian and Mr. Swigart estimated that they would each spend 7.5 hours drafting and reviewing the motion, and Ms. Amini estimated that she would spend 8 hours working on the motion.  (Dkt. 20-2 Exh. A.)  These figures are significant, because combined, they represent nearly 30% of the total hours expended on the case.  Even in a case that settles relatively quickly, the Court is not persuaded that it is reasonable to spend that proportion of the total time on a single motion.  And the Court notes that the parties were able to file two other motions of similar size and substance—the fee motion and the motion for preliminary approval—in significantly less time (and with nowhere near 15 combined hours of partner review).  (*See id.* (appearing to tally approximately 11 hours on the preliminary approval motion and 13 hours on the fee motion).)  The Court will therefore adjust the anticipated final approval motion hours downward as follows: Mr. Kazerounian and Mr. Swigart will both be compensated for 4.5 hours of work, and Ms. Amini will be compensated for 8 hours of work.  This brings Mr. Kazerounian's total compensable hour figure to 22.8, representing $13,566.00 in fees; Mr. Swigart's total compensable hour figure to 27.4, representing $16,303.00 in fees; and Ms. Amini's total compensable hour figure to 25.6, representing $7,680.00 in fees.[1]  The total fee award is $37,549.00.  Plaintiffs also note that they have expended $636.94 in compensable costs.  (Dkt. 20-2 ¶ 28; Dkt. 20-6 ¶ 19.)  Summing the fees and costs figures yields a total attorney compensation figure of **$38,185.94**.[2]

---

[1]  The math in Plaintiffs' fee motion is not accurate, (*see* Dkt. 20-1 at 9), so the Court recalculated the figures on its own.

[2]  Defendant agreed not to contest any fee award below $40,000.  *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").

### D.  Incentive Awards

Defendant has agreed to pay, and the parties seek approval of, $2,000 incentive payments for each of the three named plaintiffs (in addition to their $75.00 awards as Class Members).  (Agreement ¶ 2.5.)  "Whether to award a class representative for his efforts is within a court's discretion."  *Catala*, 2010 WL 2524158, at *5.  Relevant factors to the determination whether to approve an incentive award include "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation."  *Id.* (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  In this case, most of the relevant factors do not cut for a large incentive award.  The case settled quickly, the named Plaintiffs' involvement appears to be minimal, and Plaintiffs did not face notoriety or humiliation as a result of the decision to bring suit.  Nonetheless, the parties stipulated to the amount, which is within the ordinary range in FDCPA cases.  *Id.* (granting $2,500 to a named plaintiff); *Durham*, 2011 WL 2173769, at *2 ($4,000 to a sole named plaintiff); *Bellows*, 2008 WL 5458986, at *11 ($1,000 to a named plaintiff).  The Court will accordingly approve $2,000 incentive awards to each named plaintiff.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for final approval of the class settlement is GRANTED.  Plaintiffs' motion for attorneys' fees is GRANTED IN

SUBSTANTIAL PART.  Class counsel are awarded **$38,185.94** in fees and costs.  Class Representatives are each awarded **$2,000** as an incentive award.[3]


DATED:     June 27, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[3]  The Settlement Agreement provides that Defendant will pay the costs of the Class Administrator.  (Agreement ¶ 5.1)  Plaintiff's proposed order, however, says that the Class Administrator's costs will be paid from "the Settlement Fund."  (Dkt. 23-10.)  The Agreement does not define or establish a "Settlement Fund" and instead provides for individual payments to Class Members and a separate payment to the Class Administrator—not two payments from a single "fund."  The Court trusts that the Agreement will be executed in accordance with its terms.